UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN GORNE, *et al.*, <br><br>    Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., *et al.*, <br><br>    Defendants. | Case No. C19-1138 RAJ-MLP <br><br> REPORT AND RECOMMENDATION |

## I.   INTRODUCTION

Before the Court is Defendant Uber Technologies, Inc.'s ("Defendant" or "Uber") motion regarding choice of law and to dismiss Plaintiffs' action pursuant to Federal Rule Civil Procedure 12(b)(6) and 9(b). (Dkt. # 7 ("Uber Mot.").) This matter arises out of injuries Plaintiff Brian Gorne sustained after being stabbed by an Uber driver, Sharif Soajima, in Seattle, Washington on October 1, 2017. Plaintiff Brian Gorne and his wife Adrienne Walker claim Uber was negligent for hiring, supervising, and retaining the services of Mr. Soajima, a convicted felon. Plaintiffs also claim Uber made fraudulent misrepresentations regarding its safety protocols, background checks for its drivers, and the safety of Uber rides for passengers. Plaintiffs submitted an opposition (dkt. # 16 ("Opp'n")) and Uber submitted a reply (dkt # 18

("Reply")). Oral argument was held on October 16, 2019. (Dkt. # 20.) The Court, having reviewed the parties' submissions, supporting documents, the governing law, and the balance of the record, recommends that Defendant's motion (dkt. # 7) be DENIED.

## II. BACKGROUND

For the purpose of deciding the instant motion, the Court considers the following facts from Plaintiffs' complaint. Uber is a transportation company that is incorporated in Delaware and maintains its principal place of business in California. (Dkt. # 1 ("Compl.") at ¶¶ 5.1, 4.2.) Uber provides a software application called the Uber application ("Uber App") which customers can download with a smartphone and use to request rides from Uber drivers. (*Id*. at ¶¶ 5.1, 5.66.) Neither drivers nor riders are charged a fee to download the Uber App. (*Id.* at ¶ 5.66.) Once an Uber driver receives a ride request, the driver can accept the request and provide the customer with a ride. (*Id.* at ¶¶ 5.2-5.3.) The rider is able to enter the intended destination into the Uber App prior to entering the vehicle. (*Id.* at ¶ 5.3.) At the completion of each ride, the fare is automatically charged to the payment method linked to the rider's Uber account. (*Id.* at ¶ 5.3.) Uber processes the fare and pays the driver a fixed portion of the fare. (*Id.* at ¶ 5.57.)

Uber uses a large pool of drivers to provide rides to its customers. (Compl. at ¶ 5.56.) Drivers are required to be over 21 years of age, have a valid United States driver license, have at least one year of driving experience in the United States, and have an eligible four-door vehicle. (*Id.* at ¶ 5.57.) Individuals seeking to become an Uber driver can apply online through Uber's website. (*Id.* at ¶ 5.58.) Uber conducts background checks on its potential drivers that relies upon the individuals to submit personal identifiers through an online webpage. (*Id* at ¶ 5.107.) Uber provides the potential drivers' information to third party vendors who perform name-based background checks. (*Id.*)

In April 2014, Uber created a webpage regarding the safety of riding with Uber. (Compl. at ¶ 5.90.) The webpage contained the phrase "SAFEST RIDES ON THE ROAD." (*Id.*) The webpage also stated it was committed to "setting the strictest standards possible" and that every driver is "thoroughly screened through a rigorous process we've developed using industry-leading standards." (*Id.* at ¶ 5.92.) Uber also maintained blogs that discussed its background check process and stated that the background checks go back seven years, "the maximum allowable by the Fair Credit Reporting Act." (*Id.*) A communication representative from Uber was also quoted in the media stating Uber was confident that "every ride on the Uber platform is safer than a taxi." (*Id.* at ¶ 5.93.) Uber also implemented "Safe Rides Fees"[1] that are added to every UberX fare, which Uber represented were to support its efforts to connect riders to the safest rides, including "an industry-leading background check process." (*Id.* at ¶ 5.99.)

In late 2014, several lawsuits were filed against Uber for misleading statements regarding the safety of its services, including its representations about its "industry-leading standards." (Compl. at ¶ 5.94.) The lawsuits noted that drivers who had passed Uber's screening process and were driving for Uber were found to have felony convictions. (*Id.* at ¶ 2.4.) The State of Massachusetts also later screened in-state Uber drivers who had passed Uber's screening process and found some of the drivers to have a history of violent crimes. (*Id.* at ¶ 2.5.)

Plaintiff Gorne downloaded the Uber App in 2014. (Compl. at ¶ 6.1.) After downloading the Uber App, Plaintiff Gorne received emails from Uber regarding its background checks while he was in California. (*Id.* at ¶¶ 6.2, 6.4.) In November 2014, Plaintiff Gorne received an email from Uber stating his safety was Uber's "top priority." (*Id.* at ¶ 6.2.) Between 2014 and October 2017, Plaintiff Gorne used Uber's services on more than 150 occasions. (*Id.* at ¶ 6.3.) In using

---

[1] Plaintiff refers to these fees as both "Safe Rides Fees" and "Safe Rider" fees. For clarity, the Court refers to these fees as "Safe Rides Fees."

Uber's services, Plaintiff Gorne incurred charges related to Uber's "Safe Rides Fees" while in California and other locations. (*Id.*)

On the evening of October 1, 2017, Plaintiff Gorne connected with Uber driver Mr. Soajima for a ride using his Uber App in Seattle, Washington. (Compl. at ¶ 6.6.) The complaint alleges that Mr. Soajima was a convicted felon. (*Id*. at ¶¶ 6.13-6.16.) After entering Mr. Soajima's vehicle, Plaintiff Gorne and Mr. Soajima had a verbal altercation. (*Id.* at ¶ 6.7.) As a result, Plaintiff Gorne no longer wanted a ride from Mr. Soajima. (*Id.*) Plaintiff Gorne exited the vehicle and proceeded to step onto the sidewalk to request a different Uber driver on his phone. (*Id.* at ¶ 6.8.) Mr. Soajima exited his vehicle, walked across the front of the vehicle, approached Plaintiff Gorne, and stabbed him in the chest. (*Id.* at ¶ 6.9.)

### III.   DISCUSSION

#### A.   Legal Standard for Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'…Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.     Negligence, Negligent Hiring, Supervision, and Retention Claims**

Plaintiffs seek to hold Uber liable for the negligent hiring, supervision, and retention of Mr. Soajima as a driver. (Compl. at ¶¶ 7.1-7.13.) Specifically, Plaintiffs allege that Uber is a common carrier and therefore owed "Plaintiff Gorne and the general public a duty of reasonable care in the hiring, training, and supervision of its drivers and is responsible for the negligent and tortious actions of its drivers."[2] (*Id.* at ¶ 7.4.) Although Plaintiffs stipulate that Plaintiff Gorne had alighted from Mr. Soajima's vehicle at the time of the assault, Plaintiffs argue he remained a passenger because he had not reached "secure and maintainable footing" as Mr. Soajima immediately followed him out of the vehicle and assaulted him. (Opp'n at 7-8.)

Conversely, Uber argues that at the time of the assault, Plaintiff Gorne was no longer a passenger and therefore Uber owed him no duty of care. (Uber Mot. at 8-10.) Uber further

---

[2] Plaintiffs allege Uber owed Plaintiff Gorne a duty of reasonable care as a common carrier, however, common carriers owe a heightened duty of care. *Tinder v. Nordstrom,* 84 Wash. App. 787, 796 (1997) (quoting *Houck v. Univ. of Wash.,* 60 Wash.App. 189 (Wash.Ct.App.1991)) (internal quotation marks omitted).

REPORT AND RECOMMENDATION - 5

asserts that even if Plaintiff Gorne had been a passenger when he briefly entered Mr. Soajima's vehicle, his status as a passenger terminated when exited the vehicle because he was on the public sidewalk and "he no longer wanted to go with Mr. Soajima." (Reply at 7 (quoting Compl. at ¶ 6.7).) As such, Uber argues that the Court need not reach the issue of whether Uber is a common carrier or whether Mr. Soajima was an employee. (*Id.* at 10.) Rather, Uber asserts that the only question before the Court is whether Plaintiff Gorne was a passenger at the time of the assault, and thus owed any duty at all. (*Id.*)

### 1. Plaintiff Gorne's Passenger Status

The following factors are considered in determining a person's passenger status:

> (1) place (a place under the control of the carrier and provided for the use of persons who are about to enter carrier's conveyance); (2) time (a reasonable time before the time to enter the conveyance); (3) intention (a genuine intention to take passage upon carrier's conveyance); (4) control (a submission to the directions, express or implied, of the carrier); and (5) knowledge (a notice to carrier either that the person is actually prepared to take passage or that persons awaiting passage may reasonably be expected at the time and place).

*Zorotovich v. Toll Bridge Auth.,* 80 Wash.2d 106, 108–09 (1971). "In the absence of any unusual inherent danger, defect or obstruction in the place of alighting, [the carrier/passenger] relation ceases upon the alighting passenger gaining a secure and maintainable footing upon the street." *Welsh v. Spokane & Inland Empire Ry.,* 91 Wash. 260, 262 (1916). This principle is "well settled" in the State of Washington. *Lindgren v. Puget Sound Int'l Ry. & Power Co.,* 142 Wash. 546, 550 (Wash. 1927).

Uber bases its argument that Plaintiff Gorne was not a passenger at the time of the assault on the fact he was injured on the public sidewalk. (Uber Mot. at 9.) To support this assertion, Uber cites to *Burgdorf v. State*, 61 Wn. App. 918 (1991). (*Id.*) In *Burgdorf*, the court determined

the plaintiff, a prospective passenger, was not a passenger when she was injured in a ferry terminal lobby because the lobby was an open area available to the public and not under the sole control of the carrier. 61 Wn. App. at 921-22. The court found the public lobby was used to gain access not only to the ferry, but also a museum, restrooms, and telephones. *Id.* Uber argues that analogously, the sidewalk on which Plaintiff Gorne stood was a public space which Uber did not control or provide for persons about to enter vehicles for Uber rides. (Uber Mot. at 9.)

Uber also cites to *Shelley v. United Air Lines*, 84 Wn.App 129 (1996) and *Torres v. Salty Sea Days, Inc.*, 36 Wn.App 668 (1984). (Reply at 9.) In *Shelley*, the court found that a woman who disembarked from an airplane and arrived safely in the terminal was no longer the airline's passenger when she decided to walk through the terminal, and was later injured, rather than wait for a wheelchair to become available. 84 Wn.App at 134. In *Torres*, the court held a ferry system's duty to a ferry passenger ended at the dock where the dock was safe, and the ferry system had no notice that the passenger was intoxicated or that she planned to drive home, thereby creating a great risk of injury. 36 Wash.App. at 674-75.

Plaintiff argues this matter is distinguishable from the cases cited by Uber because although Plaintiff had alighted from the vehicle, Plaintiff Gorne had not reached a secure and maintainable footing. (Opp'n at 7.) Plaintiffs argue the facts of this matter are more similar to *Peterson v. City of Seattle*, 51 Wn.2d 187 (1957).[3] (Opp'n at 7.) In *Peterson*, the Plaintiff was injured when she slipped and fell on a snowy street after debarking a city bus. 51 Wn.2d at 188. However, as noted by Uber, the bus in *Peterson* was forced to stop under a semi-emergency due to ice and snow conditions. *Id.* at 190. The Plaintiff therefore debarked in the middle of the icy road rather than at the bus stop on the sidewalk.

---

[3] The Court notes *Peterson* was decided before Washington courts determined the factors relevant to the determination of passenger status in *Zorotovich*.

REPORT AND RECOMMENDATION - 7

Plaintiff also argues this matter is similar to that of *Zorotovich*. (Opp'n at 6.) In *Zorotovich*, a man was injured by a vehicle outside a ferry terminal when he stepped away from a safety area near a ticket booth. 80 Wash.2d at 107. The court found the man was a passenger because he was following the ticket seller's direction to go to the ticket booth to purchase a ticket, and that the place of injury "was one under the sole control of the carrier and was intended solely for the use of persons entering or departing from carrier's conveyance." *Id.* at 109.

As an initial matter, the Court finds Plaintiffs have sufficiently plead that Plaintiff Gorne was a passenger when he entered Mr. Soajima's vehicle. Plaintiff Gorne hailed Mr. Soajima for a ride home. The vehicle was under Mr. Soajima's control and used to provide Uber rides. Further, Plaintiff Gorne used his Uber App to connect with Mr. Soajima, which showed both Plaintiff Gorne's intention to receive an Uber ride and Mr. Soajima's knowledge of Plaintiff Gorne's intent. (Compl. at ¶¶ 6.6-6.7.) Although Plaintiff was only briefly in Mr. Soajima's vehicle, the Court can reasonably infer from the factors of place, time, intention, control, and knowledge that Plaintiff Gorne was as a passenger when he entered Mr. Soajima's vehicle.

The question of Uber's duty of care thus turns on whether Plaintiff Gorne's status as a passenger terminated when he exited Mr. Soajima's vehicle. Plaintiffs' complaint alleges Plaintiff Gorne "proceeded to walk onto the sidewalk and was opening his phone to call for another Uber on his phone. As Plaintiff was doing this, Soajima proceeded to get out of his vehicle and stab Mr. Gorne in the chest." (Compl. at ¶¶ 6.8-6.9). The complaint also alleges that this assault was capture by surveillance footage from a nearby camera. (*Id.*) The complaint asserts the surveillance footage shows that after Plaintiff Gorne exited Mr. Soajima's vehicle, Mr. Soajima exited the vehicle, crossed over the front of the vehicle, and moved toward Plaintiff

1  Gorne. (*Id.* at ¶ 6.9.) Mr. Soajima then made a sudden move toward Mr. Gornes, which caused
2  him to jump backward. (*Id.*)

3        Although this is a close call, there appears to be a factual dispute as to whether Plaintiff
4  Gorne had gained secure and maintainable footing on sidewalk, and thus terminated his
5  passenger status. Facts which may help determine this issue include how long Plaintiff Gorne
6  was out of the vehicle and his proximity to the vehicle. It appears from the complaint that this
7  factual dispute could be resolved through discovery, such as the surveillance footage of the
8  assault. Accepting Plaintiffs' allegations as true, Plaintiffs have plead sufficient facts to state a
9  claim that is plausible on its face. Therefore, at this early pleading stage of the litigation, the
10 Court recommends Uber's motion to dismiss Plaintiffs' negligence, negligent hiring, retaining,
11 and supervision claim be denied.[4]

12       **C.**     **Choice of Law and Punitive Damages**

13       Uber asserts that Washington law governs Plaintiffs' fraud cause of action asserted
14 against it, while Plaintiffs argue for the application of California law for this claim. (Uber Mot. at
15 13-20); (Opp'n at 23-28.) This is a diversity action under 28 U.S.C. § 1332. "Federal courts
16 sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling
17 substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting
18 *Patton v. Cox,* 276 F.3d 493, 495 (9th Cir. 2002)). Because this suit was filed in the Western
19 District of Washington, the Court applies Washington's choice of law rules.

20       Washington employs a two-step approach to choice of law questions. The court first
21 determines whether an actual conflict exists between Washington and other applicable state law.

22

23 [4] As the Court finds it inappropriate to dismiss Plaintiffs' claim at this time, the Court need not reach Uber's common carrier status or Mr. Soajima's employment status, especially in light of the fact that Uber did not move on either of these grounds.

*See Burnside v. Simpson Paper Co.*, 123 Wash.2d 93, 103-04 (1994). In the absence of a conflict, Washington law applies. *See id.*; *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 845 (9th Cir. 2001) (applying Washington law where no conflict was shown). "An 'actual conflict' exists 'between the laws or interests of Washington and the laws or interests of another state' when the…states' laws could produce different outcomes on the same legal issue." *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 550 (W.D. Wash. 2008) (quoting *Erwin v. Cotter Health Ctrs.*, 161 Wash.2d 676, 692 (2007) ). If an actual conflict exists, the court then determines the forum that has the "most significant relationship" to the action to determine the applicable law. *See Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 580 (1976). If "the contacts are evenly balanced," the second step of the analysis is to consider "the interests and public policies" of the concerned states. *Johnson,* 87 Wash.2d at 582; *see also Myers v. Boeing Co.,* 115 Wash.2d 123, 133 (1990).

The parties do not argue there is a conflict regarding Washington law and California law with regard to the elements of fraud. The parties both agree, however, that an actual conflict exists with regard to remedies because Plaintiffs seek to impose punitive damages for alleged fraud under California law, pursuant to California Civil Code § 3294, and Washington law precludes punitive damages. (Uber Mot. at 14; Opp'n at 16.) The parties disagree about whether Washington or California has the "most significant relationship" to this action. (Uber Mot. at 14-16; Opp'n at 19.)

Here, the Court finds an actual conflict exists between the law of Washington and the law of California regarding punitive damages that requires a choice of law analysis. However, the Washington Supreme Court has emphasized that choice of law is a fact-intensive question that "does not lend itself readily to disposition on a [Rule] 12(b)(6) motion." *See FutureSelect*

REPORT AND RECOMMENDATION - 10

*Portfolio Mgmt., Inc., et al. v. Tremont Group Holdings, Inc, et al.,* 180 Wash.2d 954, 966, n.12 (2014). Although many of the allegations in this matter involve Washington state, including the assault giving rise to this action, further development of the factual record is required for a choice of law question. *See, e.g., Bingham v. Blair, LLC,* C10-5005-RBL, 2010 WL 1608881, at *2 (W.D. Wash. 2010) (denying motion to dismiss punitive damages without prejudice to further review following development of the factual record necessary for the choice of law analysis). Accordingly, the Court need not resolve the issue of choice of law at this time.

        **D.**        **Fraud and Gross Negligence Claim**

Plaintiffs' fraud claim against Uber alleges that Uber knew, and continues to know, that its representations about rider safety are false and misleading. (Compl. at ¶¶ 8.1-8.11). Uber moves to dismiss this claim, arguing that Plaintiffs have failed to plead their claim with the heightened particularity required by Rule 9(b). (Uber Mot. at 10-13.)

Claims of fraud are subject to the heightened pleading requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Rule 9(b) requires that an allegation of fraud be "specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106 (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). In other words, an allegation of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

1997)). The plaintiff must identify "what is false or misleading about the statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

For the purpose of the instant motion to dismiss, the pleading requirement under Washington and California law are essentially the same. To establish fraud under Washington law a plaintiff must prove the following elements: (1) representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of the truth; (5) the speaker's intent that the recipient will rely upon the fact; (6) ignorance on the part of the recipient; (7) reliance on the part of the recipient; (8) the recipient's right to rely; and (9) recipient's resulting damage as a result of his reliance. *Williams v. Joslin,* 65 Wash.2d 696, 697 (1965). Under California law, a claim for fraud must have the following elements: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal.4th 979, 990 (2004) (citing (*Lazar v. Superior Court,* 12 Cal.4th 631, 638 (1996)).

Uber argues that the only allegations regarding Plaintiff Gorne's knowledge of, and reliance on, any Uber representations are that he: (1) received an email from Uber indicating its "top priority" was connecting riders with a safe ride after the downloading the Uber App; (2) paid "Safe Ride Fees" between 2014 and 2017; (3) received emails regarding background checks while in California and other locations; and (4) relied on Uber's representations made to him and the public. (Uber Mot. at 12.) Uber also argues that Plaintiffs failed to identify how the representation that safety was a "top priority" was false and failed to show that "Safe Ride Fees" were not used for Uber's safety efforts. (*Id.* at 13.) Uber further argues Plaintiffs failed to allege how the emails Plaintiff Gorne received about background checks were misleading or how his

reliance on them was justified. (*Id.*) Lastly, Uber argues Plaintiffs' fraud claim must fail because if Plaintiff Gorne was aware of the bad press regarding Uber's safety protocols, he used Uber's service 150 times despite the known risks. (*Id.* at 13.)

At this stage in the litigation, the court must draw all reasonable inferences in favor of the non-moving party. Reviewing the complaint, it appears Plaintiffs have provided enough notice to Uber regarding the alleged fraudulent misrepresentations at issue. (Compl. at ¶¶ 5.94-5.95.) Plaintiffs' allege that in response to lawsuits and bad press regarding Uber's alleged deficient safety protocols, Uber made representations on its webpages, blogs, and in the media to create the impression that Uber provides safe rides. (*Id*. at ¶¶ 5.89-5.105.) Plaintiffs allege Uber's efforts to promote the safeness of Uber rides included the creation of a safety webpage with statements such as "SAFEST RIDES ON THE ROAD," that Uber was setting the "strictest standards possible," and that every driver is "thoroughly screened through a rigorous process…using industry-leading standards." (*Id*. at ¶¶ 5.89-5.93.) The complaint also alleges Uber created "Safe Rides Fees" to support Uber's efforts to ensure riders safety, including its background checks. (*Id*. at ¶¶ 5.99-5.100.) Plaintiffs' further assert that Uber made these representations knowing they were false, misleading, and with the intent to induce Plaintiff Gorne to utilize Uber's services. (*Id*. at ¶¶ 2.4, 8.2-8.6.)

Although Uber argues Plaintiffs have failed to establish that Plaintiff Gorne relied on Uber's alleged misrepresentations, Plaintiffs' complaint alleges that Plaintiff Gorne "reasonably relied upon Defendant Uber's representation…that Uber's top priority was safety, and that Uber performed 'industry leading' background checks on its drivers" and that he "believed the 'Safe Rides' fee was going to be used to perform comprehensive background checks on its drivers so that no convicted violent felons would be allowed to drive for Uber." (Compl. at ¶¶ 6.3, 6.5.) It is

reasonable to infer from Plaintiffs' allegations that Plaintiff Gorne accepted rides from Uber drivers, including Mr. Soajima, in reliance on the alleged misrepresentations Uber made regarding rider safety. Further, the Court does not find Uber's argument that Plaintiff Gorne lacks justifiable reliance because if he knew of public allegations regarding Uber's alleged safety deficiencies, he should not have risked utilizing Uber's services. Plaintiffs' complaint does not allege Plaintiff Gorne possessed such knowledge.

Accordingly, the Court recommends that Uber's motion to dismiss Plaintiffs' fraud claim be denied.

### E.   PUNITIVE DAMAGES

Uber further argues that even if California law applies to Plaintiffs' fraud claim, the claim for punitive damages must be dismissed because Plaintiffs have not plead that Uber has been guilty of oppression, fraud, or malice, and further have not plead the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice on the part of an officer, director, or managing agent of Uber as required by California Civil Code § 3294(b).[5] (Uber Mot. at 20-23.) California Civil Code § 3294 provides the governing substantive law for punitive damages in this matter and the pleading standard for punitive damages is provided by the Federal Rules of Civil Procedure. *See Rees v. PNC Bank, N.A.,* 308 F.R.D. 266 (N.D. Cal. 2015) (holding that in diversity jurisdiction cases, Cal. Civ. Code § 3294 provides the governing substantive law for punitive damages, but that the Federal Rules of Civil Procedure

---

[5] California Civil Code § 3294(b) provides: "[a]n employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

provide the pleading standard for cases in federal courts).[6] To satisfy the federal pleading standard for punitive damages under the Federal Rules of Civil Procedure, a plaintiff "may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Rees,* 308 F.R.D. at 273, at *6; *Clark v. Allstate Ins. Co.,* 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000).

As discussed above, the Court finds Plaintiffs have sufficiently plead fraud. Further, the Court finds Plaintiffs have shown that Uber's alleged marketing campaign regarding the standards of its safety protocols, which Plaintiffs allege Uber knew was false and misleading, can be fairly imputed to a corporate employer because such a marketing campaign, central to Uber's business, could not have occurred without authorization from an officer, director, or managing agent. *See Anaya, et al. v. Machines de Triage et Broyage, et al.*, C18-01731-DMR, 2019 WL 359421 (N.D. Cal. Jan. 29, 2019) (finding the decision to put a product on the market with a certain design, or without certain warnings, could be imputed to a corporate employer); *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873 (N.D. Cal. 2011) (denying motion to strike because allegedly fraudulent loan would not have been made if it was not authorized or ratified by corporate employer).

Accordingly, the Court recommends Uber's motion to dismiss Plaintiffs' claims for punitive damages be denied.

---

[6] Uber argues there is a split among the district courts whether the elements of California Civil Code § 3294 must be pled with heightened specificity after *Twombly* and *Iqbal, supra*. (Uber Mot. at 21.) While the Court applies the pleading standard set forth by the Federal Rules of Civil Procedure, the Court finds Plaintiffs have sufficiently plead their claim under either standard.

REPORT AND RECOMMENDATION - 15

## IV. CONCLUSION

For the foregoing reasons, this Court RECOMMENDS that Defendant's motion regarding choice of law and to dismiss pursuant to Federal Rule Civil Procedure 12(b)(6) and 9(b) (dkt. # 7) be DENIED.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 4, 2019**. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the day after the objections were due.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Richard A. Jones.

Dated this 21st day of October, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge